UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | DOCKET NO.: 3:24cr260-MOC |
| | ) | |
| v. | ) | UNITED STATES' RESPONSE TO |
| | ) | DEFENDANT STONE'S MOTION FOR |
| JADE ASHLYNN STONE | ) | DEPARTURE AND/OR VARIANCE |
| | ) | |
| | ) | |

NOW COMES the United States of America, by and through Russ Ferguson, United States Attorney for the Western District of North Carolina, and hereby submits its response in opposition to Defendant Jade Ashlynn Stone's motion for departure and/or variance. Doc. 56. The United States opposes Defendant's motion for departure and/or variance and submits that her requested sentence of 18 months is not sufficient to achieve the goals of sentencing.

Defendant Stone asserts several grounds as justification for a downward departure or variance to 18 months in prison. First, Defendant Stone argues that she pleaded guilty quickly and before her co-defendant, Trysten Cullon. Stone received a three-level reduction in her total offense level for acceptance of responsibility, and while Stone did plead guilty approximately two months before her co-defendant, the United States submits that this happens regularly in cases with multiple defendants and there is nothing extraordinary about the timing of Stone's guilty plea. She should not receive any additional consideration for her guilty plea.

Second, in her sentencing memorandum Defendant Stone provided this Court and the United States with a more comprehensive admission of her role in the offense; this is the first time she has offered specific detail concerning her direct actions in this case. *See* Doc. 56 at 2-4. Stone admitted and corroborated the conclusions the United States advocated in its Sentencing Memorandum – that she and Cullon ultimately stole Christopher's phone when they realized the

phone was not password protected and because they were unsuccessful at transferring funds.[1] Even more important, Stone admitted that **she** "suggested using the messages to exploit Mr. Tsoulos's family to obtain money in exchange for not sharing the messages with Mr. Tsoulos's employer."[2] Doc. 56 at pp. 3-4. These admissions validating the United States' arguments are meaningful in evaluating the nature and circumstances of the offense and Stone's role in it. They certainly do not show that she was a minor player or less involved than her co-defendant, if anything they establish the opposite, that she and Cullon were equal partners in executing this crime.

Third, Defendant Stone argues that "she never stole or took anything from anyone." Doc. 56 at p. 4. However, this is false but also misses the point. At a minimum, Stone stole Christopher's phone which was never recovered, and she intended to steal thousands of dollars from him through transfers from his financial accounts. More concerning, Stone seems to be arguing that because Christopher's family was successful in stopping her and Cullon's theft, and because the family would not succumb to her extortive and threatening text messages, this is a basis to depart or vary downward. Lack of success because Christopher had people in his life that attempted to protect him should not be grounds for a downward variance.

Fourth, Defendant Stone downplays her history and characteristics, arguing that she is a "unicorn" because she does not have any prior criminal convictions. Doc. 56 at p. 5. However, as argued in the United States' Sentencing Memorandum Stone has had numerous interactions

---

[1] Defendant Stone filed her Sentencing Memorandum just minutes before the United States filed its Sentencing Memorandum. *See* Doc. 56 at 1:49 p.m. and Doc. 59 at 2:14 p.m. Without the benefit of Stone's sentencing memorandum, the United States argued that the Defendants' "interactions with Christopher at the CFA, the timing of the attempted money transfers, and the content of the text messages" to establish[ed] Stone's knowledge and bad intent. Doc. 59 at pp. 13-14.

[2] The United States informed the Court that it intended to rely on Paragraphs 60 and 72 of the PSR to establish that it was actually Defendant Stone's idea to send the extortive texts in the first place. *See Id*. at p. 15 and footnote 10.

2

with law enforcement that are highly relevant to her history and characteristics. *See* Doc. 59 at pp. 15-17 (Stone's lack of criminal convictions overlooks Stone's arrest history and her pending cases); *see also* Doc. 44 (PSR) at ¶¶ 60-66, 72.

Fifth, Stone submits that because the offense involved bodily injury, the enhancement under U.S.S.G. §2A6.2(b)(2)(B) "appears" to apply. Doc. 56 at p. 5. Stone then argues that because this enhancement applies she did not qualify for "zero point offender" status and the Court should now vary downward. The Sentencing Commission, in crafting U.S.S.G. § 4C1.1, found offenses that resulted in serious bodily injury to be significant enough to warrant denial of a further two-level reduction, even where the defendant has no criminal history. Granting a variance on this basis would completely negate and abrogate the power of that enhancement and fly in the face of the Commission's intent in § 4C1.1. While the United States does not believe Stone and Cullon intended for Christopher to take his own life, that misses the point entirely, because Stone and Cullon's intent is irrelevant for application of the serious bodily injury enhancement. But for their actions, Christopher would not have taken his life, and the callousness of Stone's actions which resulted in Christopher's death, should not be rewarded with a downward variance.

Finally, granting a downward variance in this case would cause an unwarranted sentencing disparity with her co-defendant. Stone and Cullon were co-conspirators with equal culpability, which is reinforced by Defendant Stone's admission that it was her idea to send the extortive texts in the first place. Each played a crucial role in executing their conspiracy – Cullon interacted with Christopher and physically took his phone and Stone conceived of the method by which they could extort money from his family. Moreover, to the extent there is any difference

3

between the defendants, this is accounted for in Cullon's guideline range, which is slightly higher because he has a criminal history, and he received the vulnerable victim enhancement. Any further difference in their sentences would result in an unwarranted sentencing disparity.

Therefore, for all of the foregoing reasons, the Court should deny Defendant Stone's motion for a downward departure or variance.

Respectfully submitted this 11th day of March, 2026.

RUSS FERGUSON
UNITED STATES ATTORNEY

/s/ Caryn Finley
Assistant United States Attorney
United States Attorney's Office
Western District of North Carolina
New York Bar Number: 3953882
227 West Trade Street, Suite 1650
Charlotte, North Carolina 28202
Telephone: (704) 344-6222
E-mail: Caryn.Finley@usdoj.gov

## **CERTIFICATION**

      Pursuant to the Standing Order of this Court entered June 18, 2024, and published to the Bar of the Western District on June 27, 2024, the undersigned hereby certifies:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 11th day of March, 2026.

                                                s/ Caryn Finley
                                                Caryn Finley
                                                Assistant United States Attorney